UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**THOMAS MICHAEL RYION**

                            **Plaintiff,**                        19-CV-169Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #13.

## BACKGROUND

Plaintiff applied for disability insurance and supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on November 17, 2014, alleging disability beginning August 23, 2014, at the age of 30, due to stroke, floating ribs, occupational asthma, fatigue, stabbing chest pains and anxiety. Dkt. #7, pp.81 & 270.

On September 15, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Jay Steinberger, at an administrative

hearing before Administrative Law Judge ("ALJ"), Paul Georger. Dkt. #7, pp.35-80. Plaintiff testified that he is a high school graduate. Dkt. #7, p.43. Plaintiff was working as a roofer's apprentice but couldn't handle the chemical exposure. Dkt. #7, pp.47 & 55. He testified that he cannot work because of fatigue. Dkt. #7, p.48. He cannot stand for more than a half hour or walk more than a half of a block. Dkt. #7, pp.58-59. He experiences chest pain from asthma attacks at least twice a day or when he engages in physical activity, especially if it is humid or cold. Dkt. #7, pp.48, 50 & 61. He suffers memory loss and confusion when it's really hot out. Dkt. #7, pp.51-52. Plaintiff has a driver's license, but does not drive often because he falls asleep while driving. Dkt. #7, p.43. He lives with his parents and is capable of caring for his personal needs, cooking simple meals for himself and cutting grass with a riding lawn mower. Dkt. #7, pp.53 & 60.

    The VE testified that plaintiff's past relevant work was as a construction worker, which is a semi-skilled position requiring heavy exertion. Dkt. #7, p.73. When asked whether plaintiff could perform his past work if he could not have any exposure to dust, odors, fumes or pulmonary irritants, the VE testified that plaintiff could do his past work so long as his employer was compliant with OSHA standards regarding pulmonary irritants. Dkt. #7, pp.73-74. If limited to light work with frequent reaching in all directions bilaterally, occasional use of ramps and stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching and crawling, with no exposure to extreme cold or heat and no exposure to humidity and wetness, dust, odors, fumes or pulmonary irritants, the VE testified that plaintiff could not perform his past work, but could work as a

cashier, sales attendant or cafeteria attendant, each of which are unskilled, light exertion positions. Dkt. #7, pp.74-75. Upon further questioning, the VE conceded that the cafeteria attendant and cashier positions in stores with food preparation would be precluded if plaintiff could not be exposed to any cleaning chemicals. Dkt. #7, p.77.

The ALJ rendered a decision that plaintiff was not disabled on January 29, 2018. Dkt. #7, pp.17-28. The Appeals Council denied review on December 11 2018. Dkt. #7 p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 6, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of August 23, 2014; (2) plaintiff's occupational asthma, leukocytosis and anemia constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work and can lift 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours, push/pull as much as he can lift and carry, frequently reach, including overhead to the left and right, stoop and kneel, occasionally climb ramps, stairs, ladders, ropes or scaffolds, crouch and crawl and can never be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants and extreme cold or extreme heat; and (5) plaintiff was not capable of performing his past work as a construction worker but could work as a cashier, sales attendant, or cafeteria attendant, each of which were unskilled jobs requiring light exertion, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.22-27.

      Plaintiff argues that the ALJ failed to properly evaluate and explain the weight afforded to medical opinion evidence from Dr. Sfeir in January of 2017; failed to provide adequate reasons for rejecting opinions from Dr. Duvivier and Dr. Steinagle; selectively read the record to afford great weight to Dr. Sfeir's 2014 opinion; and failed to account for limitations provided by Kevin King and consultative examiner, Dr. Balderman. Dkt. #9-1, pp.17-18. Plaintiff argues that the ALJ failed to appreciate the implications of plaintiff's need to avoid chemical exposure or to incorporate limitations resulting from his occupational asthma and fatigue, including time off-task and missed work days. Dkt. #9-1, pp.20-25. Plaintiff also argues that the ALJ failed to develop the record regarding plaintiff's cognitive and anger issues, as identified by Dr. Kang and Dr. DiPirro. Dkt. #9-1, pp.25-30.

The Commissioner responds that the ALJ properly weighed the objective medical evidence, medical source opinions and plaintiff's subjective complaints and provided sufficient explanation to support his determination that plaintiff was capable of performing light work that did not involve exposure to pulmonary irritants. Dkt. #11-1, pp.12-17. The Commissioner further responds that the ALJ's determination was based upon a complete record and that the ALJ properly considered all of plaintiff's complaints. Dkt. #11-1, pp.17-20.

An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019), quoting 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015). If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Id.*

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions form non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383.

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to

make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support her conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006).

In the instant case, the Court finds that the ALJ appropriately weighed the medical opinions of plaintiff's pulmonologist, hematologist, primary care physician and consultative examiners, along with the underlying treatment notes and plaintiff's subjective complaints and reported activities of daily living to determine plaintiff's RFC, which is supported by substantial evidence.

Prior to plaintiff's alleged disability onset date, Dr. Sfeir, a pulmonologist, diagnosed plaintiff with mild occupational asthma following his exposure to isocyanates on a construction site. Dkt. #7, p.341. On August 27, 2014, days after plaintiff's alleged disability onset date, Dr. Sfeir opined that plaintiff could return to work. Dkt. #7, p.411. The ALJ afforded this opinion great weight, because it was consistent with other opinions of record, as well as the overall record that shows the claimant is capable of working on a sustained basis. Dkt. #7, p.25. Dr. Sfeir also opined that plaintiff could

never work around isocyanates again (Dkt. #7, p.344), an opinion which the ALJ incorporated into the environmental limitations imposed upon plaintiff's RFC and his finding that plaintiff could no longer perform his past relevant work as a construction worker. Dkt. #7, p.26.

On January 4, 2017, Dr. Sfeir noted that plaintiff was stable on all of his bronchodilators, but essentially homebound, explaining that plaintiff "has the potential to worsen dramatically if he spends time outdoors or if he is exposed to environmental allergens or irritants". Dkt. #7, p.1088. Dr. Sfeir indicated that he would send plaintiff's lawyer a note, because he believed that plaintiff "will not be able to work again." Dkt. #7, p.1088. Although the ALJ did not specifically address this opinion, it is well established that the ultimate question of disability is reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999). Moreover, Dr. Sfeir's limitations with respect to environmental allergens or irritants are accounted for in the ALJ's determination that plaintiff could not be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants and extreme cold or extreme heat. Dkt. #7, p.24.

The environmental limitations imposed by the ALJ are also consistent with the limitations suggested by consultative examiner, Samuel Balderman, M.D. who noted that pulmonary function tests performed by plaintiff's physician revealed mild pulmonary disease and opined that plaintiff should avoid further chemical exposure and dusty environments. Dkt. #7, p.693. Further limitations are not supported by Dr. Sfeir's treatment notes, which generally indicate that plaintiff's occupational asthma was under good control and stable, with consistent notations of clear bilateral breath sounds

without wheezing and normal peak expiratory flow rate ("PEFR"). Dkt. #7, pp.348, 352, 364-365, 417, 420, 441, 1077, 1088, 1090.

Although the ALJ afforded little weight to the opinion of Gordon Steinagle, D.O., at Comprehensive Occupational Medical Services, following examinations of plaintiff for workers' compensation, the ALJ's determination that plaintiff was not capable of performing his past relevant work as a roofer and required significant environmental limitations is consistent with Dr. Steinagle's opinion that plaintiff could not return to roofing work or isocyanate exposure and should be referred to VESID to establish capabilities for future employment. Dkt. #7, pp.370, 422, 426, 782, 786. Plaintiff's suggestion that he is precluded from any exposure to any chemical or any potential environmental irritant is unsupported by the medical record as well as plaintiff's activities of daily living, which include cutting grass with a riding lawn mower, cooking, general cleaning, preparing food, laundry, taking public transportation, and denial of asthma symptoms upon normal activity Dkt. #7, pp.53, 60, 286-87, 688, 1081.

Herbert Duvivier, M.D., at CCS Oncology examined plaintiff for elevated white blood count and mild anemia on October 22, 2014. Dkt. #7, p.637. Upon examination on November 11, 2014, plaintiff's blood work was within normal limits with no explanation for his previous leukocytosis and mild anemia. Dkt. #7, p.643. Subsequent examinations revealed normal blood work, with no evidence of leukocytosis or anemia, with an exception on October 19, 2016 when plaintiff reported exposure to chemicals. Dkt. #7, p.685, 697, 747, 810, 916, 919, 922, 925, 1190. Subsequent to that exposure, however, plaintiff's blood work returned to baseline,

prompting Dr. Duvivier to advise plaintiff to avoid future chemical exposure. Dkt. #7, pp.810, 925. Despite these objective findings, Dr. Duvivier completed medical examination forms for social services opining that plaintiff was 100% disabled due to fatigue and cannot return to work exposure to isocyanate. Dkt. #7, pp.324, 799, 819, 1157. The ALJ afforded this opinion little weight, as it was conclusory and inconsistent with the opinion of other medical providers. Dkt. #7, p.25. This assessment of Dr. Duvivier's opinion is supported by substantial evidence, including Dr. Duvivier's determination that plaintiff's anemia and leukocytosis had resolved and the absence of any treatment plan for plaintiff's complaints of fatigue, as well as the results of a functional capacity evaluation conducted one-month prior to Dr. Duvivier's completion of the medical examination form for social services.

On May 10, 2017, Kevin King, Registered/Licensed Occupational Therapist at Buffalo Ergonomics OT Services, PLLC, conducted a functional capacity evaluation of plaintiff to establish safe physical demand levels to assist the New York Workers' Compensation Board in determining plaintiff's mandated permanency rating. Dkt. #7, pp.803-806. The summary and recommendations of that evaluation stated, *inter alia*:

> 3. At this time [plaintiff] has demonstrated the ability to perform up to 40# of medium physical demand level work. However, the client's waist to floor lift was 25#s and waist to shoulder lift was 20#s.
>
> 4. Based upon the FCE and the client's increased overall fatigue levels demonstrated during the evaluation I would recommend that [plaintiff] not work above a light physical demand level with the ability to take breaks as needed.

Dkt. #7, p.803. The ALJ afforded this assessment great weight as it was based on an

examination of the plaintiff and supported by objective findings. Dkt. #7, p.25. Although the ALJ did not address the caveat that plaintiff be afforded the ability to take breaks as needed, that recommendation should be considered in light of the specific findings upon evaluation. Dkt. #7, pp.805-806. For example, plaintiff was observed to show signs of upper extremity and trunk muscle fatigue, deterioration of gait, and increased overall fatigue with increased weight and reps when performing horizontal lift and front lift carry for twenty feet, prompting a finding that plaintiff should not perform such activity continuously, but should intermix it with other activity. Dkt. #7, p.805. Notwithstanding this finding, plaintiff was expected to be able to lift 40 pounds occasionally and 20 pounds frequently over the course of an eight-hour day and forty-hour week. Dkt. #7, pp.803 & 805. Similarly, plaintiff displayed signs of trunk muscle fatigue and increased overall fatigue with increased duration of standing and distance in walking, prompting a finding that plaintiff should intermix standing and walking with other activity, even while indicating that plaintiff was capable of standing and walking up to two-thirds of a workday. Dkt. #7, p.806. Thus, the functional capacity evaluation supports the ALJ's determination that plaintiff was capable of employment at the light exertion level notwithstanding his fatigue.

A consultative psychiatric evaluation was completed on May 29, 2015 with Gregory Fabiano, Ph.D., who opined that plaintiff did not appear to have psychiatric problems that would be significant enough to interfere with the plaintiff's ability to function on a daily basis. Dkt. #7, p.689. More specifically, Dr. Fabiano opined that plaintiff did not appear to have any limitations in his ability to follow and understand simple directions or instruction, perform simple tasks independently, maintain attention

and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequatley with others, and appropriately deal with stress. Dkt. #7, p.688. The ALJ afforded Dr. Fabiano's opinion great weight. Dkt. #7, p.25. The ALJ was within his discretion to credit this opinion notwithstanding the recommendation of neurologist Minsoo Kang. M.D., that plaintiff obtain a formal neuropsychometric evaluation to assess multiple changes on an MRI scan of plaintiff's brain. Dkt. #7, p.1153. Moreover, Dr. DiPirro's prescription of an anti-depressant to treat his diagnosis of chronic and stable anxiety (Dkt. #7, pp.568, 624), does not suggest a severe mental impairment or contradict Dr. Fabiano's consulting opinion.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** Buffalo, New York
September 17, 2020

       *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**

-13-